IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 28, 2012

**ALEJANDRO RIVERA v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Cocke County**
**No. 29,257-I    Ben W. Hooper, II, Judge**

_____

**No. E2011-01147-CCA-R3-PC - Filed September 20, 2012**

_____

Petitioner, Alejandro Rivera, appeals the dismissal of his petition for post-conviction relief in which he alleged that he received ineffective assistance of trial counsel because: (1) counsel failed to "formulate a defense and to present testimony from all essential witnesses;" and (2) counsel failed to file an appeal to the Tennessee Supreme Court. After a review of the record, we conclude that Petitioner has failed to show that his trial counsel rendered ineffective assistance of counsel and affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the  court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Jeffery S. Greene, Newport, Tennessee, for the appellant, Alejandro Rivera.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; James B. Dunn, District Attorney General; and W. Brownlow Marsh, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Petitioner was convicted of first degree premeditated murder and was sentenced to life imprisonment. On direct appeal, this Court affirmed Petitioner's conviction and sentence. A summary of the facts underlying Petitioner's conviction can be found in this Court's opinion in the direct appeal. *State v. Alejandro Rivera, No.* E2002-00491-CCA-R3-CD,

2003 WL 22843170 (Tenn. Crim. App. Dec. 1, 2003) *perm. app. denied* (Tenn., Mar. 16, 2009).

## II. Post-Conviction Hearing

Trial counsel testified that he and another attorney represented Petitioner at trial. He did not recall if Petitioner asked him to file an appeal to the Tennessee Supreme Court, but he and co-counsel intended to file one. Concerning the appeal, trial counsel said:

> Somehow we miss [sic] calendared that and it was not. I filed a petition for a late appeal with the Supreme Court. They denied that based on the State's brief. My research showed that [Petitioner] wouldn't suffer because you'd have to come back through post-conviction. I wrote [Petitioner] a letter and told him to file a post-conviction.

Trial counsel testified that Petitioner filed a post-conviction petition, and there was a hearing. He said that Petitioner was granted a delayed appeal, which was subsequently denied by the Supreme Court. Trial counsel did not believe that the delayed appeal prejudiced Petitioner in any way.

Trial counsel testified that there were approximately five witnesses who were allowed to testify at trial as to statements made by Denice Smith and Deborah Graham. He and trial counsel challenged two of the witnesses "very strongly in Court, here and in the Court of [Criminal] Appeals" because their statements were made before Petitioner was introduced to the witnesses. Trial counsel testified that the statements were made by Ms. Smith or Ms. Graham about wanting to get someone to kill the victim, and he felt that they were testimonial in nature. Trial counsel said that he was not allowed to cross-examine either Ms. Smith or Ms. Graham about those statements, which was an issue that he argued in the Court of Criminal Appeals.

Trial counsel remembered that Vernon Brown was called as a witness at trial and testified that he saw a white male with long, black hair in a ponytail knock on the victim's door. When asked if he sought out or presented any theories, based on Mr. Brown's testimony, of anyone else who may have fit that description or been involved in the case, trial counsel said:

> Based on what Mr. Brown said, based on information we got from the state at the 11[th] hour basically before trial, about a Hodge as I recall[,] who fit that description who had been identified by [the victim and Denice Smith's ten-year-old daughter], on one of the Georges during a critical conversation, yes.

Trial counsel recalled that in a statement to police, the victim's daughter, who was fourteen-years-old at the time of trial, said that one of the "Georges" had a missing earring and blood on his ear. He said that the victim's daughter was cross-examined about the blood because they were "hoping to show that we had evidence that that [hotel] room was not occupied when she said all this happened, but we wanted to establish as much as we could as far as things that would point to someone else in that, yes." Trial counsel knew that the back portion of an earring was found at the murder scene. Although he could not recall, trial counsel said that if the victim's daughter was cross-examined about the earring, it was to establish "that the blood was there on one of the George's ears and that the earring was missing."

Trial counsel did not recall if he asked the victim's daughter to describe the two "Georges" to the jury. He said: "I would be surprised if either during the course of the direct examination or our examination there was not some description. I remember the room was dark, but she could recognize the people she said anyway." Trial counsel did not recall questioning her on whether her mother, Denice Smith, had her climb through a window to get some of Denice Smith's belongings after her divorce from the victim.

Trial counsel testified that the victim was shot once in the ear from the front and twice from behind, once in the back, and once in the back of the head. He was not aware of any evidence as to whether all of the shots were fired from the same gun or the number of shooters. Trial counsel did not know if any theories were presented as to how the victim's body ended up positioned on the front yard of his home. Post-conviction counsel noted that it was stipulated at trial that the .357 pistol found at the scene was the gun that fired a spent bullet found on the ground. Trial counsel could not recall if there was any evidence presented which connected that bullet with the victim's death. He did not recall if any bullets were recovered from the victim's body. Trial counsel testified that there was a .357 magnum that belonged at the residence. He did not recall any testimony about the "specific gun" that caused the victim's death. Trial counsel noted that none of Petitioner's prints were found on the victim's property.

Trial counsel testified that handcuffs, "to a degree," played an important role in the case. He said that the victim's daughter testified that she saw Petitioner with a pair of handcuffs in his pocket, and a pair of handcuffs were found at the murder scene. Trial counsel testified that Petitioner had a handcuff key in his pocket at the time of his arrest, but the key did not fit the handcuffs found at the scene. That evidence was presented at trial. Trial counsel testified that there was information in one of the reports that the victim's daughter had identified Harry Hodges and one of the "Georges." When asked if he cross-examined her about Mr. Hodges, trial counsel said:

Only - - no, we didn't necessarily want to mention that name at that point; I didn't at least during the trial. But as to the person who had the earring missing and had the blood on his ear, I recall a question or two about that.

Trial counsel testified that after he found out about Mr. Hodges, he filed a motion for a continuance. He did not get an opportunity to speak with Mr. Hodges or subpoena him for court. He did not know what Mr. Hodges would have said.

Trial counsel testified that Petitioner received a speeding ticket from a state trooper at 7:41 p.m. on July 23, 1997, near Madisonville, Tennessee. Trial counsel said that his investigator, Mike Cohan, calculated the time to drive from Newport, Tennessee to Miami, Florida. He said that the trip took approximately "14 to 16 hours if you make very good time." Trial counsel agreed that Ms. Smith testified that she heard Defendant, her mother, her grandfather, and the "two Georges" late at night in Miami talking about something bad that had happened, and someone was killed. Ms. Smith also testified that her aunt was wearing a pink ice ring and that Petitioner was wearing a gold nugget watch. Trial counsel testified that a pawn shop operator presented a ticket from the pawn shop which indicated that Petitioner pawned an Elgin watch, a pink ice ring, and a Noah's Ark bracelet, which had been removed from the victim's residence, at 7:52 p.m. on July 24, 1997. When asked if that information was presented to the jury, trial counsel said:

What was presented to the jury was that the room in which [the victim's daughter] said this encounter took placed was unoccupied at that time in the evening, that it had been unoccupied since 11:34 on the morning of the 23rd.

Trial counsel testified that he and co-counsel "presented the time frame involved and we presented the person who managed or had dealing with the hotel to indicate the room was not even occupied at that time." He did not recall if the evidence of the pawn shop ticket was presented to the jury.

Trial counsel agreed that Vernon Brown testified that he saw someone at the victim's house, heard gunshots, and saw a car speed out of the campground. He said that the investigator talked with a number of people who were in the campground, but he did not specifically recall Charles Reno's name. Trial counsel acknowledged that a memo from Mr. Cohan, the investigator, indicated that Mr. Reno heard something that sounded like gunshots, but he did not see anyone exit the park. Trial counsel testified that he did not call Mr. Reno as a rebuttal witness because he did not feel that Mr. Reno added a lot to the case. He said that they focused more on the fact that no one saw Petitioner in the area. Trial counsel testified that Mr. Cohan also interviewed Kay Bryant who said that she was sitting in her camper and heard gunshots. However, she said that she was used to hearing gunshots in the

area. Ms. Bryant told the investigator that she did not see anyone in the park or any vehicles. Trial counsel testified that he did not call her as a witness because "[w]e didn't feel like she had anything in the case at least for our defense."

Trial counsel testified that the defense was that Petitioner "wasn't there and didn't do it pretty much." He said that they used some of the State's witnesses to show that no one saw Defendant. Trial counsel testified that Petitioner was very "distinct" and would have "stood out in Cocke County." He said: "My recollection is our defense was established through the State witnesses and those things, not directly on his behalf." Trial counsel testified that he did not request a mental or psychological evaluation of Mr. Rivera because he did not see a need for one. Trial counsel felt that he spent an adequate amount of time on Petitioner's case and noted that he personally took two trips to Miami to work on the case.

Trial counsel testified that he and co-counsel called a few witnesses "showing the travel arrangements and those kinds of things and phone calls that were made during that time." He said:

> [W]e had several witnesses who talked about the phone contacts that they had with the twin who allegedly was here in Newport when she got back to Miami and couldn't find her father and the other sister, and we also had witnesses, as I recall, where the family went to [talk] about the conversation when they arrived back there. So, I mean, as far as other than that, what loop, that was the witnesses that we had.

Trial counsel testified that there was a .357 magnum found upstairs at the victim's residence and one found outside. He said that there was some cross-examination about the victim having several guns that were stored upstairs in a closet.

On cross-examination, trial counsel testified that he put forth a theory on the time line of events and how long it took to drive to Miami from Tennessee. He and co-counsel used the ticket from the state trooper to establish that time line. He did not recall whether they used the pawn shop ticket. Trial counsel said that the conversation that [the victim's daughter] testified to could not have happened for two reasons, "one was the time deal, but secondly, it was the fact the [hotel] room was empty."

## III. Standard of Review

Petitioner contends that he received ineffective assistance of counsel in two areas: (1) counsel failed to "formulate a defense and to present testimony from all essential witnesses;" and (2) counsel failed to file an appeal to the Tennessee Supreme Court.

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). The trial court's application of the law to the facts is reviewed *de novo,* without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to *de novo* review. *Id*.; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id*. at 690, 104 S.Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id*. Failure to satisfy either prong will result in the denial of relief. *Id*. Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Petitioner argues that trial counsel was ineffective for failing to present two witnesses to contradict the testimony of Vernon Brown, who gave a description of the car leaving the murder scene. We assume that Petitioner is referring to Charles Reno and Kay Bryant who told the investigator that they heard gunshots but did not see anyone exit the park. Ms. Bryant said that she was sitting in her camper at the time and was used to hearing gunshots in the area. Petitioner further alleges that trial counsel failed to present evidence that the victim's daughter saw someone in the hotel room after the murder with a bloody ear and a missing earring when the back portion of an earring was found at the crime scene. However, Petitioner failed to call these witnesses at the post-conviction hearing. It has long been held that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at

the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). This Court may not speculate as to their testimony. *Id*. Therefore, Petitioner failed to show that he was prejudiced by trial counsel's failure to call the witnesses.

Next, Petitioner contends that trial counsel failed to present any evidence as to the murder weapon and whether the bullet found at the scene was the one that killed the victim. Petitioner further alleges that trial counsel failed to present any evidence that Petitioner received a speeding ticket in Tennessee, "yet he was supposed to be in Miami within a few hours of receiving the ticket." Petitioner has not alleged how trial counsel's performance was deficient in this area nor has he alleged that he was prejudiced in any way by counsel's performance. We note that "[c]onclusory statements in petitioner's brief are not evidence of ineffective assistance of counsel or evidence of prejudice to the petitioner." *State v. Kerley*, 820 S.W.2d 753, 757 (Tenn. Crim. App. 1991). The post-conviction court specifically found that Petitioner presented no proof as to these claims and therefore, failed to carry his burden of proof or show that he was prejudiced by "any actions or inactions of counsel," and the record supports this finding. We point out that testimony concerning the speeding ticket was presented by the State. *See State v. Alejandro Rivera*, No. E2002-00491-CCA-R3-CD, 2003 WL 22843170, at *6 (Tenn. Crim. App. Dec. 1, 2003) *perm. to appeal denied* (Mar. 16, 2009). At the post-conviction hearing, trial counsel testified that he put forth a theory on the time line of events and how long it took to drive to Miami from Tennessee. He and co-counsel used the ticket from the state trooper to establish that time line.

Finally, Petitioner contends that he received ineffective assistance of counsel because trial counsel failed to file a timely appeal to the Tennessee Supreme Court. Trial counsel admitted that he miscalendared the due date of Petitioner's Rule 11 application to the Supreme Court. Trial counsel testified that Petitioner filed a post-conviction petition, and there was a hearing. He said that Petitioner was granted a delayed appeal, which was subsequently denied by the Supreme Court. Trial counsel did not believe that the delayed appeal prejudiced Petitioner in any way. Concerning this issue, the post-conviction court found:

> In this case, obviously the court did what it absolutely had to do and that was take steps allowing this delayed appeal, which then raises the question of whether or not it was prejudicial because it was not timely filed. There is no way that court could find that it was prejudicial. It was allowed. It went to the Supreme Court. They denied the application for permission to appeal. And I don't know exactly how they do that, but I'm pretty sure that they pay very close attention to what the Court of Criminal Appeals has done.

The record supports the post-conviction court's finding. The Post-conviction Procedure Act of 1995 provides for a "delayed appeal" when a petitioner through no fault of his own had been "denied the right to an appeal from the original conviction." Tenn. Code Ann. § 40-30-113(a). Supreme Court Rule 28, section 9(D), allows either a trial court or this Court to grant a delayed appeal. A petitioner may obtain such an appeal due to counsel's ineffective assistance on direct appeal. *Wallace v. State*, 121 S.W.3d 652, 656 (Tenn. 2003). In this case, Petitioner was granted a delayed appeal, the statutory remedy available, a Rule 11 application was filed with the Tennessee Supreme Court, and the application was considered and subsequently denied. Petitioner has shown absolutely no prejudice in trial counsel's failure to file a timely appeal to the Supreme Court.

We conclude that Petitioner has failed to show that counsel's assistance fell below acceptable standards or that Petitioner was prejudiced by any aspect of his counsel's assistance. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE